## HANS NIELSEN, Petitioner.

APPEAL FROM THE FIRST JUDICIAL DISTRICT COURT OF THE TER-
RITORY OF UTAH.

No. 1527. Argued April 18, 22, 1889. — Decided May 13, 1889.

Where a court is without authority to pass a particular sentence, such sen-
tence is void, and the defendant imprisoned under it may be discharged
on *habeas corpus.*

A judgment in a criminal case denying to the prisoner a constitutional
right, or inflicting an unconstitutional penalty, is void, and he may be
discharged on *habeas corpus.*

THIS was an appeal from a final order of the District Court
for the First Judicial District of the Territory of Utah, refus-
ing to issue a *habeas corpus* applied for by the petitioner, who
prayed to be discharged from custody and imprisonment on a
judgment rendered by said court on the 12th of March, 1889.
The judgment was that the petitioner, Hans Nielsen, having
been convicted of the crime of adultery, be imprisoned in the
penitentiary of the territory for the term of 125 days. The
appeal to this court is given by § 1909 of the Revised Statutes.
The case arose upon the statutes enacted by Congress for
the suppression of polygamy in Utah. The 3d section of the
act, approved March 22, 1882, entitled "An act to amend sec-
tion fifty-three hundred and fifty-two of the Revised Statutes
of the United States, in reference to bigamy, and for other
purposes," reads as follows:

"SEC. 3. That if any male person, in a territory or other
place over which the United States have exclusive jurisdiction,
hereafter cohabits with more than one woman, he shall be
deemed guilty of a misdemeanor, and, on conviction thereof,
shall be punished by a fine of not more than three hundred
dollars, or by imprisonment for not more than six months, or
by both said punishments, in the discretion of the court." 22
Stat. 31, c. 47, § 3.

The 3d section of the act of March 3, 1887, entitled "An
act to amend an act entitled an act to amend section fifty-

three hundred and fifty-two of the Revised Statutes of the United States, in reference to bigamy and for other purposes," reads as follows:

"SEC. 3. That whoever commits adultery shall be punished by imprisonment in the penitentiary not exceeding three years; and when the act is committed between a married woman and a man who is unmarried, both parties to such act shall be deemed guilty of adultery; and when such act is committed between a married man and a woman who is unmarried, the man shall be deemed guilty of adultery." 24 Stat. 635, c. 397, § 3.

On the 27th of September, 1888, two indictments were found against the petitioner, Nielsen, in the District Court, one under each of these statutes. The first charged that on the 15th of October, 1885, and continuously from that time till the 13th of May, 1888, in the district aforesaid, he, the said Nielsen, did unlawfully claim, live and cohabit with more than one woman as his wives, to wit, with Anna Lavinia Nielsen and Caroline Nielsen. To this indictment, on being arraigned, Nielsen on the 29th of September, 1888, pleaded guilty; and on the 19th of November following he was sentenced to be imprisoned in the penitentiary for the term of three months and to pay a fine of $100 and the costs.

The second indictment charged that said Nielsen, on the 14th of May, 1888, in the same district, did unlawfully and feloniously commit adultery with one Caroline Nielsen, he being a married man and having a lawful wife, and not being married to said Caroline. Being arraigned on this indictment on the 29th of September, 1888, after having pleaded guilty to the other, Nielsen pleaded not guilty, and that he had already been convicted of the offence charged in this indictment by his plea of guilty to the other.

After he had suffered the penalty imposed by the sentence for unlawful cohabitation, the indictment for adultery came on for trial, and the petitioner, by leave of the court, entered orally a more formal plea of former conviction, in which he set up the said indictment for unlawful cohabitation, his plea of guilty thereto, and his sentence upon said plea, and claimed

that the charge of unlawful cohabitation, though formally made only for the period from 15th October, 1885, to 13th May, 1888, yet, in law, covered the entire period from October, 1885, to the time of finding the indictment, September 27th, 1888, and thus embraced the time within which the crime of adultery was charged to have been committed; and he averred that the Caroline Nielsen with whom he was charged to have unlawfully cohabited as a wife, was the same person with whom he was now charged to have committed adultery; that the unlawful cohabitation charged in the first indictment continued without intermission to the date of finding that indictment; and that the offence charged in both indictments was one and the same offence and not divisible, and that he had suffered the full penalty prescribed therefor.

To this plea the district attorney demurred, the court sustained the demurrer, and the petitioner, being convicted on the plea of not guilty, was sentenced to be imprisoned in the penitentiary for the term of 125 days. The sentence was as follows, to wit:

"The defendant, with his counsel, came into court. Defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him, to which he replied that he had none; and no sufficient cause being shown or appearing to the court, thereupon the court rendered its judgment:

"That whereas said defendant, Hans Nielsen, having been duly convicted in this court of the crime of adultery, it is therefore ordered, adjudged and decreed that the said Hans Nielsen be imprisoned in the penitentiary of the Territory of Utah, at the county of Salt Lake, for the term of one hundred and twenty-five days.

"You, said defendant, Hans Nielsen, are rendered into the custody of the United States marshal for the Territory of Utah, to be by him delivered into the custody of the warden or other proper officer of said penitentiary.

"You, said warden or other proper officer of said penitentiary, are hereby commanded to receive of and from said

United States marshal him, the said Hans Nielsen, convicted and sentenced as aforesaid, and him, the said Hans Nielsen, to safely keep and imprison in said penitentiary for the term as in this judgment ordered and specified."

Thereupon being delivered into the custody of the marshal, the defendant below, on the next day, or day following, during the same term of the court, presented to the court his petition for a *habeas corpus*, setting forth the indictments, proceedings and judgments in both cases, and his suffering of the sentence on the first indictment, and claiming that the court had no jurisdiction to pass judgment against him upon more than one of the indictments, and that he was being punished twice for one and the same offence. As before stated, the court being of opinion that if the writ were granted he could not be discharged from custody, refused his application. That order was appealed from.

*Mr. Jeremiah M. Wilson* and *Mr. Franklin S. Richards* for the petitioner, appellant.

*Mr. Solicitor General*, on behalf of the United States, opposing.

I. The record in this case does not show want of jurisdiction in the court below, but only alleged errors of the court in the exercise of its jurisdiction. If the judgment of the court in sustaining the demurrer was wrong, it was an error, but the error was one of judgment. The judgment might be voidable for error, but was not void for want of power, and, until reversed, was conclusive. *Ex parte Watkins*, 3 Pet. 191, 202. The writ of *habeas corpus* should not be converted into a mere writ of error. *Ex parte Parks*, 93 U. S. 18; *Ex parte Carll*, 106 U. S. 521; *Ex parte Bigelow*, 113 U. S. 328; *Pitner* v. *The State*, 44 Texas, 578.

II. The defendant was not placed twice in jeopardy for the same offence.

(1) The offences charged in the first and second indictments are not the same. The first indictment charges unlawful co-

habitation under the third section of the act of the 22d of March, 1882, 22 Stat. 31. Its descriptive language is, "hereafter cohabits with more than one ·woman." The second charges adultery under the third section of the act of the 19th of February, 1887, 24 Stat. 635. Its descriptive language is,· "whoever commits adultery." The definition of adultery is : The voluntary sexual intercourse of a married person with a person other than the offender's husband or wife. 1 Bouvier's Law Dictionary, 126. The essential elements of this crime are that the offender shall be married; that he or she shall have sexual intercourse with a person other than his or her husband or wife ; that his or her husband or wife shall be living at the time of the act. No one of these elements is essential to the offence of " unlawful cohabitation." The word " cohabit " in the statute means " to be together as husband and wife." The offence is to live with more than one woman, holding out to the world by word or deed that such women are the wives of the offender. Neither actual marriage nor sexual intercourse are essential elements of this offence. These propositions are all sustained by the opinion of this court in the case of *Cannon* v. *United States*, 116 U. S. 55.

(2) The first indictment is for a continuous offence.· The time laid in it is : " On the 15th day of October, 1885,  .  .  . and on divers days thereafter, and continuously between the day last aforesaid and the 13th day of May, 1888." Under this indictment no evidence could have been received of any act done on the 14th day of May, 1888, nor on any other day later than the 13th. *Commonwealth* v. *Robinson*, 126 Mass. 259. The time laid in the second indictment is, " On the 14th day of May, 1888." There is no period of time that is common in the two indictments. No evidence could have been given on the first indictment for any offence committed as charged in the second. The records therefore relied on by the petitioner do not show that he was placed twice in jeopardy, but show on the contrary, *prima facie*, that he was not. The burden of proving the identity of the offences is on the defendant. Wharton's Crim. Pl. and Pr. § 483.

(3) But even if the offence of "unlawful cohabitation" included one element of the crime of adultery, and both had been laid within the same time, it is not conceded that the petitioner was thereby placed twice in jeopardy. *Moore* v. *People of the State of Illinois*, 14 How. 20.

In the case of *Morey* v. *Commonwealth*, 108 Mass. 433, the defendant had been indicted at September Term, 1867, for lewd and lascivious association and cohabitation with Bridget Kennedy. The offence was laid from October 1, 1866, continuously to August 1, 1867. He was convicted. At the same term he was convicted for adultery with Bridget Kennedy, in which the dates were laid January 1, June 1 and August 1, 1867. The court ruled that he had not been twice convicted of the same offence. The conclusion is thus stated by Gray, J., delivering the opinion: "The indictment for adultery alleged and required proof that the plaintiff in error was married to another woman, and would be satisfied by proof of that fact and of a single act of unlawful intercourse. Proof of unlawful intercourse was indeed necessary to support such indictment. But the plaintiff in error could not have been convicted upon the first indictment by proof of such intercourse, and of his marriage, without proof of continuous unlawful cohabitation; nor upon the second indictment by proof of such cohabitation, without proof of his marriage. Full proof of the offence charged in either indictment would not, therefore, of itself, have warranted any conviction upon the other. The necessary consequence is, that assuming that proof of the same act or acts of unlawful intercourse was introduced on the trial of both indictments, the conviction upon the first indictment was no bar to a conviction and sentence upon the second."

The authorities bearing upon the question are fully cited, compared and discussed in the above case; among others the case of *Commonwealth* v. *Roby*, 12 Pick. 496, in which it was ruled a conviction for assault with intent to murder did not bar a conviction for murder committed by the same act.

In the case of *State* v. *Elder*, 65 Indiana, 282, it is ruled: "But when the same facts constitute two or more offences,

wherein the lesser offence is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offences were both committed at the same time and by the same act." See also *Commonwealth* v. *McShane*, 110 Mass. 502, and authorities there cited; and *Shannon* v. *Commonwealth*, 14 Penn. St. 226. Where the evidence to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good, but not otherwise. 1 Wharton's Crim. Law, Pr., Pl. and Ev. §§ 565 and 565*a*.

MR. JUSTICE BRADLEY, after stating the case as above reported, delivered the opinion of the court.

The first question to be considered, is, whether, if the petitioner's position was true, that he had been convicted twice for the same offence, and that the court erred in its decision, he could have relief by *habeas corpus?*

The objection to the remedy of *habeas corpus*, of course, would be, that there was in force a regular judgment of conviction, which could not be questioned collaterally, as it would have to be on *habeas corpus*. But there are exceptions to this rule which have more than once been acted upon by this court. It is firmly established that if the court which renders a judgment has not jurisdiction to render it, either because the proceedings, or the law under which they are taken, are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged from custody on *habeas corpus*. This was so decided in the cases of *Ex parte Lange*, 18 Wall. 163, and *Ex parte Siebold*, 100 U. S. 371, and in several other cases referred to therein. In the case of *In re Snow*, 120 U. S. 274, we held that only one indictment and conviction of the crime of unlawful cohabitation, under the act of 1882, could be had for the time preceding the finding of the indictment, because the crime was a continuous one, and was

but a single crime until prosecuted; that a second conviction and punishment of the same crime, for any part of said period, was an excess of authority on the part of the District Court of Utah; and that a *habeas corpus* would lie for the discharge of the defendant imprisoned on such conviction. In that case, the *habeas corpus* was applied for at a term subsequent to that at which the judgment was rendered; but we did not regard this circumstance as sufficient to prevent the prisoner from having his remedy by that writ.

It is true that, in the case of Snow, we laid emphasis on the fact that the double conviction for the same offence appeared on the *face* of the judgment; but if it appears in the indictment, or anywhere else in the record, (of which the judgment is only a part,) it is sufficient. In the present case it appeared on the record in the plea of *autre fois convict*, which was admitted to be true by the demurrer of the government. We think that this was sufficient. It was laid down by this court in *In re Coy*, 127 U. S. 731, 758, that the power of Congress to pass a statute under which a prisoner is held in custody may be inquired into under a writ of *habeas corpus* as affecting the jurisdiction of the court which ordered his imprisonment; and the court, speaking by Mr. Justice Miller, adds: "And if their want of power appears on the face of the record of his condemnation, whether in the indictment or elsewhere, the court which has authority to. issue the writ is bound to release him:" referring to *Ex parte Siebold*, 100 U. S. 371.

In the present case, it is true, the ground for the *habeas corpus* was, not the invalidity of an act of Congress under which the defendant was indicted, but a second prosecution and trial for the same offence, contrary to an express provision of the Constitution. In other words, a constitutional immunity of the defendant was violated by the second trial and judgment. It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights, than an unconstitutional conviction and punishment under a valid law. In the first case, it is true, the court has no authority to take cognizance of the case; but, in the other, it has no authority to render judgment

against the defendant.   This was the case in *Ex parte Lange*, where the court had authority to hear and determine the case, but we held that it had no authority to give the judgment it did.   It was the same in the case of Snow: the court had authority over the case, but we held that it had no authority to give judgment against the prisoner.   He was protected by a constitutional provision, securing to him a fundamental right.   It was not a case of mere error in law, but a case of denying to a person a constitutional right.   And where such a case appears on the record, the party is entitled to be discharged from imprisonment.   The distinction between the case of a mere error in law, and of one in which the judgment is void, is pointed out in *Ex parte Siebold*, 100 U. S. 371, 375, and is illustrated by the case of *Ex parte Parks*, as compared with the cases of Lange and Snow.   In the case of Parks there was an alleged misconstruction of a statute.   We held that to be a mere error in law, the court having jurisdiction of the case.   In the cases of Lange and Snow, there was a denial or invasion of a constitutional right.   A party is entitled to a *habeas corpus*, not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner.   As said by Chief Baron Gilbert, in a passage quoted in *Ex parte Parks*, 93 U. S. 18, 22, " If the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge."   This was said in reference to cases which had gone to conviction and sentence.   Lord Hale laid down the same doctrine in almost the same words.   2 Hale's Pleas of the Crown, 144.   And why should not such a rule prevail *in favorem libertatis ?*   If we have seemed to hold the contrary in any case, it has been from inadvertence.   The law could hardly be stated with more categorical accuracy than it is in the opening sentence of *Ex parte Wilson*, 114 U. S. 417, 420, where Mr. Justice Gray, speaking for the court, said : " It is well settled by a series of decisions that this court, having no jurisdiction of criminal cases by writ of error or appeal, cannot discharge on *habeas corpus* a person imprisoned under

the sentence of a Circuit or District Court in a criminal case unless the sentence exceeds the jurisdiction of that court, or there is no authority to hold him under the sentence." This proposition, it is true, relates to the power of this court to discharge on *habeas corpus* persons sentenced by the Circuit and District Courts; but, with regard to the power of discharging on *habeas corpus*, it is generally true that, after conviction and sentence, the writ only lies when the sentence exceeds the jurisdiction of the court, or there is no authority to hold the defendant under it. In the present case, the sentence given was beyond the jurisdiction of the court, because it was against an express provision of the Constitution, which bounds and limits all jurisdiction.

Being of opinion, therefore, that *habeas corpus* was a proper remedy for the petitioner, if the crime of adultery with which he was charged was included in the crime of unlawful cohabitation for which he was convicted and punished, that question is now to be considered.

We will revert for a moment to the case of *In re Snow*. Three crimes of unlawful cohabitation were charged against Snow, in three indictments, the crimes being laid continuous with each other, one during the year 1883, one during 1884, and one during 1885. We held that they constituted but a single crime. In the present case there were two indictments; one for unlawful cohabitation with two women down to May 13th, 1888, and the other for adultery with one of the women the following day, May 14th, 1888. If the unlawful cohabitation continued after the 13th of May, and if the adultery was only a part of, and incident to it, then an indictment for the adultery was no more admissible, after conviction of the unlawful cohabitation, than a second indictment for unlawful cohabitation would have been; and for the very good reason, that the first indictment covered all continuous unlawful cohabitation down to the time it was found. The case would then be exactly the same as that of *In re Snow*. By way of illustrating the argument we quote from the opinion in that case. Mr. Justice Blatchford delivering the opinion of the court, said : " The offence of cohabitation, in the sense of this

statute, is committed if there is a living or dwelling together as husband and wife. It is inherently a continuous offence, having duration; and not an offence consisting of an isolated act. That it was intended in that sense in these indictments is shown by the fact that in each the charge laid is that the defendant did on the day named and 'thereafter and continuously,' for the time specified, 'live and cohabit with more than one woman, to wit, with' the seven women named, and, 'during all the period aforesaid' 'did unlawfully claim, live and cohabit with all of said women as his wives.' Thus, in each indictment, the offence is laid as a continuing one, and a single one, for all the time covered by the indictment; and, taking the three indictments together, there is charged a continuing offence for the entire time covered by all three of the indictments. There was but a single offence committed prior to the time the indictments were found. . . . On the same principle there might have been an indictment covering each of the thirty-five months, with imprisonment for seventeen years and a half, and fines amounting to $10,500, or even an indictment covering every week. . . . It is to prevent such an application of penal laws, that the rule has obtained that a continuing offence of the character of the one in this case can be committed but once, for the purposes of indictment or prosecution, prior to the time the prosecution is instituted." These views were established by an examination of many authorities.

Now, the petitioner, in his plea, averred in terms that the unlawful cohabitation, with which he was charged in the first indictment, continued without intermission up to the time of finding that indictment, covering the time within which the adultery was laid in the second indictment. He also averred that the two indictments were found against him upon the testimony of the same witnesses, on one oath and one examination as to the alleged offence, covering the entire time specified in both indictments. This plea was demurred to by the prosecution, and the demurrer was sustained. The averments of the plea, therefore, must be taken as true. And, assuming them to be true, can it be doubted that the adultery charged

in the second indictment was an incident and part of the unlawful cohabitation? We have no doubt of it. True, in the case of Snow, we held that it was not necessary to prove sexual intercourse in order to make out a case of unlawful cohabitation; that living together as man and wife was sufficient; but this was only because proof of sexual intercourse would have been merely cumulative evidence of the fact. Living together as man and wife is what we decided was meant by unlawful cohabitation under the statute. Of course, that includes sexual intercourse. And this was the integral part of the adultery charged in the second indictment; and was covered by and included in the first indictment and conviction. The case was the same as if the first indictment had in terms laid the unlawful cohabitation for the whole period preceding the finding of the indictment. The conviction on that indictment was in law a conviction of a crime which was continuous, extending over the whole period, including the time when the adultery was alleged to have been committed. The petitioner's sentence, and the punishment he underwent on the first indictment, was for that entire, continuous crime. It included the adultery charged. To convict and punish him for that also was a second conviction and punishment for the same offence. Whether an acquittal would have had the same effect to bar the second indictment is a different question, on which we express no opinion. We are satisfied that a conviction was a good bar, and that the court was wrong in overruling it. We think so because the material part of the adultery charged was comprised within the unlawful cohabitation of which the petitioner was already convicted and for which he had suffered punishment.

The conclusion we have reached is in accord with a proposition laid down by the Supreme Judicial Court of Massachusetts in the case of *Morey* v. *Commonwealth*, 108 Mass. 433, 435. The court there says, by Mr. Justice Gray: "A conviction of being a common seller of intoxicating liquors has been held to bar a prosecution for a single sale of such liquors within the same time, upon the ground that the lesser offence, which is fully proved by evidence of the mere fact of unlawfully mak-

ing a sale, is merged in the greater offence; but an acquittal of the offence of being a common seller does not have the like effect. *Commonwealth* v. *Jenks*, 1 Gray, 490, 492; *Commonwealth* v. *Hudson*, 14 Gray, 11; *Commonwealth* v. *Mead*, 10 Allen, 396." Whilst this proposition accords so nearly with our own views, it is but fair to say that the decision in *Morey* v. *Commonwealth* is the principal one relied on by the government to sustain the action of the District Court of Utah in this case. Morey was charged under a statute in one indictment with lewdly and lasciviously associating and cohabiting with a certain female to whom he was not married; and in another indictment he was charged with committing adultery with the same person on certain days within the period of the alleged cohabitation. The court held that a conviction on the first indictment was no bar to the second, although proof of the same acts of unlawful intercourse was introduced on both trials. The ground of the decision was, that the evidence required to support the two indictments was not the same. The court said: " A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not, whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." p. 434. We think, however, that that case is distinguishable from the present. The crime of loose and lascivious association and cohabitation did not necessarily imply sexual intercourse, like that of living together as man and wife, though strongly presumptive of it. But be that as it may, it seems to us very clear that where, as in this case, a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence.

It may be contended that adultery is not an incident of unlawful cohabitation, because marriage of one of the parties must be strictly proved. To this it may be answered, that whilst this is true, the other ingredient (which is an incident of unlawful cohabitation) is an essential and principal ingredient of adultery; and, though marriage need not be strictly proved on a charge of unlawful cohabitation, yet it is well known that the statute of 1882 was aimed against polygamy, or the having of two or more wives; and it is construed by this court as requiring, in order to obtain a conviction under it, that the parties should live together as husband and wives.

It is familiar learning that there are many cases in which a conviction or an acquittal of a greater crime is a bar to a subsequent prosecution for a lesser one. In Mr. Wharton's Treatise on Criminal Law, vol. 1, § 560, the rule is stated as follows, to wit: "An acquittal or conviction for a greater offence is a bar to a subsequent indictment for a minor offence included in the former, wherever, under the indictment for the greater offence, the defendant could have been convicted of the less;" and he instances several cases in which the rule applies; for example, "An acquittal on an indictment for robbery, burglary, and larceny, may be pleaded to an indictment for larceny of the same goods, because upon the former indictment the defendant might have been convicted of larceny." "If one be indicted for murder, and acquitted, he cannot be again indicted for manslaughter." "If a party charged with the crime of murder, committed in the perpetration of a burglary, be generally acquitted on that indictment, he cannot afterwards be convicted of a burglary with violence, under 7 Wm. IV and 1 Vic. c. 86, 2, as the general acquittal on the charge of murder would be an answer to that part of the indictment containing the allegation of violence." "An acquittal for seduction is a bar to an indictment for fornication with the same prosecutrix." "On the same principle, in those States where, on an indictment for adultery, there could be a conviction for fornication, an acquittal of adultery is a bar to a prosecution for fornication." It will be observed that all these instances are supposed cases of acquittal; and in order that an acquittal may be a bar

to a subsequent indictment for the lesser crime, it would seem to be essential that a conviction of such crime might have been had under the indictment for the greater. If a conviction might have been had, and was not, there was an implied acquittal. But where a conviction for a less crime cannot be had under an indictment for a greater which includes it, there it is plain that while an acquittal would not or might not be a bar, a conviction of the greater crime would involve the lesser also, and would be a bar; and then the proposition first above quoted from the opinion in *Morey* v. *Commonwealth* would apply. Thus, in the case of *The State* v. *Cooper*, 1 Green, N. J. Law, 361, where the defendant was first indicted and convicted of arson, and was afterwards indicted for the murder of a man burnt and killed in the fire produced by the arson, the Supreme Court of New Jersey held that the conviction of the arson was a bar to the indictment for murder, which was the result of the arson. So, in *State* v. *Nutt*, 28 Vermont, 598, where a person was convicted of being a common seller of liquor, it was held that he could not afterwards be prosecuted for a single act of selling within the same period. "If," said the court, "the government see fit to go for the offence of being a 'common seller,' and the respondent is adjudged guilty, it must, in a certain sense, be considered as a *merger* of all the distinct acts of sale up to the filing of the complaint, and the respondent cannot be punished but for one offence." Whereas, in *Commonwealth* v. *Hudson*, 14 Gray, 11, after an acquittal as a common seller, it was held that the defendant might be indicted for a single act of selling during the same period. See 1 Bishop's Crim. Law, 5th ed. § 1054, etc.

The books are full of cases that bear more or less upon the subject we are discussing. As our object is simply to decide the case before us, and not to write a general treatise, we content ourselves, in addition to what has already been said, with simply announcing our conclusion, which is, that the conviction of the petitioner of the crime of unlawful cohabitation was a bar to his subsequent prosecution for the crime of adultery; that the court was without authority to give judgment and sentence in the latter case, and should have vacated

and set aside the same when the petitioner applied for a *habeas corpus;* and that the writ should have been granted and the petitioner discharged.

*The judgment of the District Court is reversed, and the cause remanded, with directions to issue a* habeas corpus *as prayed for by the petitioner, and proceed thereon according to law.*