**UNITED STATES of America,
Appellee,**

v.

**Henry MOORE, Defendant-Appellant.
No. 216, Docket 26558.**

United States Court of Appeals
Second Circuit.

Argued Jan. 13, 1961.

Decided May 4, 1961.

Clark, Circuit Judge, dissented.

Kevin Thomas Duffy, Asst. U. S. Atty., New York City (S. Hazard Gillespie, Jr., U. S. Atty. for Southern District of New York, George I. Gordon, Asst. U. S. Atty., New York City, on the brief), for appellee.

Lewis A. Stern, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before CLARK, MAGRUDER and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Defendant, Henry Moore, appeals from a judgment of conviction, after a trial before a jury, on counts I and III of an indictment charging him and a co-defendant Clarence Grant with unlawful transportation and sale of narcotics (count I) and with conspiring (count III) to violate the narcotics laws (21 U. S.C.A. §§ 173, 174). Grant pleaded guilty to count I, Moore was convicted on this count; count III was dismissed at the end of the government's case.

The appellant's claim of reversible error is based primarily upon the receipt in evidence of pre-arraignment admissions which he contends were made without any warning of his rights during an illegal delay in arraignment and post-arraignment statements made without the benefit of counsel, without adequate

advice as to his rights and during a period of illegal detention. In so arguing, appellant relies strongly on the dissenting opinions in In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376; Anonymous Nos. 6 and 7 v. Baker, 360 U.S. 287, 79 S.Ct. 1157, 3 L.Ed.2d 1234; Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; and Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523. He also asserts that the district court refused to hold a hearing on the "totality of circumstances" surrounding the making of his statements, thereby committing reversible error.

Probably no problem in recent years has received more attention from the courts than the proper technique to be used, and the protocol to be observed, by law enforcement agencies in making arrests and endeavoring to solve serious crimes. If appellant's contentions were carried to their logical conclusions, they would require police officers in pursuit of a suspect to commandeer a lawyer during the chase and, if by chance they did overtake the object of their pursuit, to say, respectively and simultaneously, "You are under arrest," "Don't say a word." Yet without counsel present, any statement no matter how voluntarily made, if this were to be the law, might well fall within the category of an illegal pre-arraignment statement which would practically assure the defendant (if convicted) of a new trial.

■ The majority opinions in Groban, Baker, Crooker and Cicenia do not indicate that any such procedure is required. Furthermore, these cases and many others cited by appellant all involve the review of state convictions which "presents a very different situation." The Supreme Court in the state confession cases [1] was "concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice." United States v. Mitchell, 1944, 322 U.S. 65, 68, 64 S.Ct. 896, 897, 88

L.Ed. 1140. Obviously, in a civilized society, a "coerced confession" should not be used as proof of guilt. But what constitutes coercion must be determined from the facts in order to ascertain whether the behavior of the law enforcement officials was such as to "overbear [petitioner's] will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not [petitioner] in fact spoke the truth" (Rogers v. Richmond, 356 U.S. 534, 81 S.Ct. 735, 741, 5 L.Ed.2d 760). Moreover, in the Federal Courts an incriminating statement is inadmissible if it was elicited from the defendant "during a period of unlawful detention." Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct., 1356, 1359, 1 L.Ed.2d 1479; see McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Just as an admission will therefore be inadmissible when the facts establish that it was obtained through coercion or during an illegal detention, the absence of such facts which would support such a conclusion leaves appellant's statements without taint of illegality.

■ Appellant on the night of August 18, 1958, delivered a package of heroin to his co-defendant Grant, who in turn gave it to a narcotics agent in fulfillment of a purchase transaction negotiated between Grant and the agent.

On December 4, 1958, Moore was arrested and taken to the office of the Bureau of Narcotics where he was photographed and fingerprinted. This process took about a half-hour to an hour. During this period, he talked with narcotics agents but was not very informative—particularly with respect to his source of supply which they were desirous of ascertaining. He was then taken before a United States Commissioner. After his Rule 5 appearance (F.R.Crim.Proc. rule 5(a)), Moore was interviewed and a statement taken by an Assistant United States Attorney for a period of three to five minutes according to Moore's testimony.

---

1. Crooker and Cicenia.

In default of posting bail, he was then taken to jail.

Upon the trial, the government did not offer the statement or any "confession" as a part of its case. After the government had rested, Moore took the stand in his own defense. Upon cross-examination, he was confronted with certain questions and answers which were read to him from his statement. No objection was interposed to this procedure. Moore admitted giving many of the answers but when the question was read relating to the delivery of narcotics by Moore to his co-defendant Grant, Moore's counsel asked for an opportunity to inspect the statement "to establish whether his constitutional rights were protected." The request was granted. After reading it and apparently satisfied, defense counsel said, "You may proceed." Further questions and answers were thereupon read, again without objection. Moore admitted giving some of the answers and denied giving others. The defense then rested. Two days later, the stenographer who had taken down the statement was called by the government to attest to its accuracy by reading his original notes. The statement was offered in evidence but before it was received, defense counsel was afforded an opportunity to cross-examine as to the circumstances under which it was given. At the conclusion of such cross-examination, defense counsel moved to suppress the contents of the statement on the grounds (1) that "a lay defendant [was] being questioned by a government attorney after a prosecution had been commenced"; that defendant "was never advised of his right to remain silent"; and that "no inference could be drawn hostile to him arising from the fact that he took advantage of his abso-lute right to remain silent." The stenographic notes and the transcription were received in evidence. No claim was made upon argument at that time or by Moore when on the stand that the Commissioner did not advise him of his rights as provided in Rule 5 of the Rules of Criminal Procedure, 18 U.S.C.A. The statement on its face showed that the Assistant United States Attorney had said that "you have a right under the Constitution not to answer any questions that you feel may tend to incriminate you in a federal crime." He added, "Is that clear?", to which Moore answered, "Yes."

After the statement was received in evidence, Moore then again took the stand and claimed for the first time that when he gave the statement he was "hazy" because he had had only one dose of narcotics on that day.[2] However, the haziness applied only to the answers relating to the delivery of the package. All his other answers he said were accurate.

Appellant urges reversible error in the refusal of the trial court to hold a hearing "on the totality of circumstances surrounding appellant's statement." Since the statement was not offered as part of the government's case, there was no occasion for such a hearing during the government's case in chief. However, after defendant's attorney objected to the use of the stenographer's transcript, a short discussion, without the presence of the jury, took place between the trial judge and defendant's attorney during which the latter elaborated on his objection. The only ground of inadmissibility advanced during this colloquy was that defendant was not advised of his rights before this statement was

---

2. To place the additional burden upon law enforcement officers of supplying suspects with sufficient doses of narcotics to remove a "hazy" status before any questioning is undertaken would be of dubious wisdom. Medical science has not yet discovered the number of grains necessary for each individual to render his acts freely self-determined. A fraction too much might well create a state of such euphoria (which I understand is the purpose of taking narcotics) that the suspect might be willing to say anything. Despite the disfavor of the truth or falsity test, the courts could scarcely endow a confession so obtained with any attributes of legality.

made. Since the statement on its face belied this assertion, the objection was overruled and the trial continued. However, the trial court again gave defense counsel an opportunity in the presence of the jury to inquire concerning the statement. Furthermore, when Moore took the stand and when the statement was offered, defense counsel had every opportunity to develop the facts. Thus, all the circumstances surrounding the giving of appellant's statement were fully developed.

■ Appellant next contends that any questioning "after arrest and arraignment without his being represented by counsel, violated [his] constitutional right to counsel." There is no proof that Moore requested counsel. He was not altogether a stranger to the courtroom scene, having been convicted more than ten or twelve times by his own admission. He also acknowledged that he knew that he had a right to remain silent when he gave his statement.

The illegal detention argument is wholly lacking in merit. After arraignment the detention was not illegal. Furthermore, McNabb, supra, reaffirmed in Mitchell, supra, specifically teaches that "The mere fact that a confession was made while in the custody of the police does not render it inadmissible." 318 U. S. at page 346, 63 S.Ct. at page 615.

■ As to the propriety of the sentence, dismissal of the conspiracy count (count III) did not carry with it exoneration of the charges in count I. The statute does not differentiate as to sentence between receiving, concealing, buying, selling or facilitating.

In summary, there is no evidence whatsoever that any pressure of any kind was brought upon appellant to overbear any will to resist or that his statements were not freely self-determined, and the factual basis for application of the McNabb-Mallory doctrine is here totally lacking.

The judgment is affirmed.

CLARK, Circuit Judge (dissenting).

In my view the defendant created a factual issue on the question whether or not his post-arraignment confession was voluntary, and this question should have been submitted to the jury with instructions to disregard the confession unless they found it to have been voluntarily given. He testified that he was hazy from lack of narcotics at the time he gave the confession. On redirect he amplified and clarified this statement by saying that he was not feeling well and wanted to get out of the office as quickly as possible. The confession shows on its face that he either was lying in part or did not completely understand the questions, for he first admitted that he gave the package to Grant and then a few questions later said that he gave it to the agent. In these circumstances sufficient doubt was cast on the admissibility of the confession to require that the jury be given proper instructions on the question of voluntariness. The trial judge, however, not only said nothing on the issue, but accepted the evidence in full in a short instruction concluding with the completely damaging statement that defendant admitted he knew what was going on when he was being interrogated.

The question is thus more than one of police "protocol"; it is the nature of the evidence accepted by the judge and hence obviously by the jury as demonstrating guilt. It seems clear to me that, against the background just described, the confession should not have been sent to the jury for consideration without cautionary instructions, which were never given. Defendant's failure to request such instructions should not be held a waiver of the objection. The problem of coerced confessions is a familiar and recurring one, and the trial court can properly be expected to fashion appropriate instructions on the issue even when not specifically requested. The prejudicial impact of such confessions is so great and so final that the failure to give adequate instructions constitutes plain error. Fed. R. Crim. P. 52(b). I would therefore reverse and remand for a new trial.